Estate of Leo Melnik, Deceased, Samuel Goldenberg, Executor, and Estate of Rose M. Melnik, Deceased, Samuel Goldenberg, Successor Trustee of the Trusts Created by The Last Will and Testament of Rose M. Melnik, Deceased v. Commissioner.
Estate of Melnik v. Commissioner
Docket No. 77607.
United States Tax Court
T.C. Memo 1961-18; 1961 Tax Ct. Memo LEXIS 328; 20 T.C.M. (CCH) 74; T.C.M. (RIA) 61018; January 27, 1961
*328 Leo Melnik was a certified public accountant and a partner with Max B. Karan in the accounting partnership of Melnik and Karan. During a period of about 20 years, the partnership developed good will in the form of a substantial clientele consisting of 88 clients. The partners had an equal undivided interest in such good will. In 1954, Karan purchased Melnik's interest in said good will for an agreed price payable in installments. Ancillary to the sale of his interest, Melnik agreed that he would not solicit or accept employment from any of the clients named in an exhibit to the agreement of sale for three years and four months from July 1, 1954. Some of the installment payments were made to Melnik during the years in question. There is no evidence of a cost basis of the partnership good will. Held: That the payments received by Melnik in 1954 and 1955 for his interest in the good will represent long-term capital gain. Held, further, that section 736 of the 1954 Code applies only to payments made by a partnership and not to transactions between the partners. J. Curtis McKay, Esq., for the petitioners. John L. Pedrick, Esq., for the respondent. FISHER
Memorandum Findings of Fact and *329 Opinion FISHER, Judge: Respondent determined deficiencies in income tax of the decedents as follows: Year
Income Tax
1954
$ 937.49
1955
1,510.22
The basic question presented is whether or not payments to Melnik by Karan for Melnik's interest in good will represent capital gain or ordinary income. Findings of Fact Some of the facts are stipulated and are incorporated herein by reference. Samuel Goldenberg is the legal representative of the estate of each of the deceased taxpayers, Leo Melnik and Rose M. Melnik. Leo Melnik and Rose Melnik, during the taxable years here involved, were husband and wife, residing in Milwaukee, Wisconsin. The taxpayers for the taxable years 1954 and 1955 filed their joint income tax returns with the director of internal revenue for the district of Wisconsin. Leo Melnik was a certified public accountant who, for many years prior to July 1, 1954, conducted a public accounting practice in Milwaukee, Wisconsin, in partnership with Max B. Karan, also a certified public accountant. On May 5, 1954, Leo Melnik and Max B. Karan entered into a written agreement in the form of a letter offer by Leo Melnik and an acceptance thereof by Max B. Karan. The effect of the agreement *330 of May 5, 1954, hereinafter referred to as the "agreement," was, so far as here material, the sale by Melnik to Karan of Melnik's interest in the good will of the partnership of Melnik and Karan as of July 1, 1954. Attached to the agreement was an exhibit containing a list of 88 clients which were then being served by the accounting firm of Melnik and Karan. The agreement included a covenant that Melnik would not solicit or accept employment from any of the clients named in the exhibit for a period of three years and four months from July 1, 1954. The agreement, constituting Melnik's offer and acceptance by Karan, provided, in part, as follows: 1. I [Leo Melnik] hereby, assign, transfer and set over unto you [Max B. Karan] as the remaining partner of the firm of Melnik & Karan, Certified Public Accountants, my interest in said partnership of Melnik & Karan, as the same shall appear on July 1, 1954, as shown in Exhibit "A" hereto attached, except that I shall receive one-half of the office furniture and equipment presently belonging to the firm of Melnik & Karan. 2. As of July 1, 1954, you [Max B. Karan] will discontinue the use of the name of Melnik and Karan as a firm name and shall *331 have the right to continue servicing the Accounting Clients of Melnik & Karan as per list attached hereto and marked Exhibit "A", either by yourself or in conjunction with any party of your choosing. 3. I [Leo Melnik] may engage, either alone or in conjunction with others, in the practice of Accounting and Income Tax work after July 1, 1954, in my own name, but I shall not use the name of Melnik & Karan. Provided, however, that I agree not to solicit or accept employment from any of the named clients of Melnik & Karan mentioned in the list attached hereto, which list is marked Exhibit "A", for a period of three (3) years and four (4) months from July 1, 1954. 4. The payment to me of the sum of $30,000.00, which is evidenced by a certain promissory note this day executed to me by you and endorsed by Samuel Sampson guaranteeing payment, does not include my one-half share of fees due the firm of Melnik & Karan as of this date and fees that will be earned for work commenced prior to July 1, 1954, but which may not be completed on that day. 5. When such fees, referred to in Paragraph 4, are collected, I shall be entitled to one-half (1/2) of such fees so collected. All fees received by *332 the firm of Melnik & Karan, or its successors after July 1, 1954, from clients listed in Exhibit "A", shall first be applied on amounts due for work commenced prior to July 1, 1954, and completed later, and deposited in the American State Bank partnership account of Melnik & Karan, and distributed immediately, equally. 6. This agreement applies only to the partnership accounts of Melnik & Karan, a list of which is hereto attached and which has been identified as Exhibit "A" and incorporated herein by reference as though fully set out herein, and does not apply to the individual or sole clients of either you or myself. 7. All books and records of the partnership shall be made available to me at all times. 8. I shall have the right to enforce payment of any outstanding accounts of the partnership of Melnik & Karan if not paid by July 1, 1955. 9. On July 1, 1954, the partnership of Melnik & Karan will attach a list hereto giving the name and address and the amount due to said partnership of accounts receivable and also a list of all work in process by the partnership. The partnership of Melnik & Karan will pay for any labor, traveling or other direct expenses on work that has to be completed *333 after July 1, 1954, and I shall share equally in the fee charged to clients for this work. 10. In the servicing of the clients of the present partnership Melnik & Karan after July 1, 1954, and for a period of three years (3) and four months (4) thereafter, you agree as follows: (a) To open a new bank account in your own name, or in the name of any person of your choosing, in any bank of your choice, as a depositary for fees received on any new work in servicing the list of the clients of Melnik & Karan after July 1, 1954, such bank account to be subject to the withdrawal of your signature or any signature you may designate. (b) To maintain the present partnership account of Melnik & Karan in the American State Bank as a depositary for fees for services started by the firm of Melnik & Karan to clients of the firm prior to July 1, 1954, until completion of work and collection of all accounts in full. (c) To save me free and harmless from any and all obligations of any kind, nature or description of the firm of Melnik & Karan after July 1, 1954. (d) To be solely responsible and liable for any and all liabilities and/or obligations incurred by you in the servicing of the clients of Melnik *334 & Karan as an accountant and tax consultant after July 1, 1954. (e) To continue in force and pay the premiums of the insurance policy amounting to $10,000.00 of my life wherein my wife, Rose, is the beneficiary, which insurance is with the American Institute of Accounts Insurance Trust. I agree to reimburse you for any premiums that you may pay with respect thereto. You further agree to purchase $30,000.00 worth of insurance on your life in stock companies designating me as the beneficiary of such policy. You shall have the right to designate a co-beneficiary of your choice, such beneficiary to share in the proceeds of such policy or policies remaining over and above any sums due me by virtue of you this day executing to me an installment note in the sum of $30,000.00. It is understood that you shall pay the premiums due on such policy or policies and appropriate receipts submitted to me as same are paid. In case of default in the payment of any of the premiums on the due dates the remainder due under this agreement shall become due. As of the close of the year 1953, the partnership of Melnik & Karan owned furniture and fixtures having a cost to the partnership of $1,943.87, and as *335 of that time the capital account of Melnik was in the amount of $663.64, and $663.61 in the case of Karan. Collections on outstanding accounts receivable of the partnership of Melnik & Karan as of July 1, 1954, were made during each of the years 1954, 1955, and 1956 and distributed in equal shares to Melnik and Karan. The receipt of such income and the division was reported on partnership returns for each of such years filed in the name of Melnik & Karan. The 1954 partnership return was signed by Karan, while the 1955 and 1956 partnership returns were signed by Melnik. Karan received his Certified Public Accountant Certificate in 1931, and Melnik received his certificate in 1932. They became associated in a partnership for the purpose of conducting an accounting business in 1932. At the time of the formation of the partnership of Melnik & Karan in 1932, both individuals had separate clients which did not become accounting clients of the partnership and each partner continued to serve personal clients outside the partnership during the period of its existence. At the time of the agreement of May 5, 1954, Karan and Melnik had individual clients outside the partnership, which were not *336 included in the clients listed as an attachment to the agreement. After the effective date of the agreement, July 1, 1954, the partnership bank account of Melnik & Karan continued to be maintained. Collection on the outstanding receivables, made over a period of about two and one-half years, were deposited in that account and then paid out in equal portions to Melnik and Karan. After the July 1, 1954, effective date of the agreement, the partnership name of Melnik and Karan was not used by Karan in his accounting business, except in the collection of the outstanding receivables. The name of Melnik & Karan was removed from the building directory of the building in which the partnership business was formerly conducted. Clients of the partnership of Melnik & Karan were notified of the dissolution of the partnership verbally by Karan. At the time of the execution of the agreement of May 5, 1954, Karan had no knowledge of any intention on the part of Melnik to retire from the practice of accounting. Subsequent to July 1, 1954, one of the previous accounts of the partnership of Melnik & Karan, the General Merchandise Company, declined to accept Karan as its certified accountant and the account *337 was sold back to Melnik for $750. Karan would not have entered into the agreement of May 5, 1954, if it had not included a provision restricting Melnik from soliciting the partnership accounting clients listed on the attachment to the agreement, and also prohibiting Melnik from accepting employment by any of them. Prior to the agreement of May 5, 1954, the partnership of Melnik & Karan on its books of account had not shown any value for good will as an asset. Under date of May 5, 1954, and as a part of the agreement, Karan executed an installment note to Melnik, calling for a principal sum of $30,000 in payments of $750 per month until the date of the last installment, November 1, 1957. As a part of the agreement and at the insistence of Melnik, Samuel Sampson executed a guarantee of the payment of $30,000 to Melnik. In his Federal tax return for 1954, Melnik reported the amount of $18,202.13 as his distributive share of partnership income from the partnership of Melnik & Karan, and reported a gain in the amount of $3,750 from a sale of a partnership interest in Melnik & Karan, claiming no cost basis for such interest. In his Federal tax return for 1955, Melnik reported income from *338 the partnership of Melnik & Karan in the amount of $13,980.43, and reported long-term capital gain from the sale of a partnership interest in Melnik & Karan in the amount of $8,250. In his Federal tax returns for each of the years 1954 and 1955, Melnik gave as his occupation "Public Accountant" and reported gross profit from a business as a certified public accountant in the amount of $4,915 for the year 1954, and gross profit in the amount of $10,160 for the year 1955. The Commissioner determined that the amounts of $3,750 and $8,250, reported by taxpayers for the respective years 1954 and 1955 as long-term capital gains from the sale of a partnership in Melnik & Karan, are taxable as ordinary income under the provisions of section 61 of the Code of 1954. Opinion Petitioners take the position that, in so far as here material, Melnik sold to Karan Melnik's interest in the partnership good will; that the agreement or covenant not to solicit or accept employment from any of the named clients was merely ancillary to the sale of the good will and was not severable therefrom; that the good will was a capital asset; and that the proceeds of the sale thereof resulted in long-term capital *339 gain taxable as such. We think the record fully supports petitioners' contention. Respondent urges that good will does not attach to the practice of a profession such as accounting which fundamentally requires the performance of personal services. But we have, on at least three occasions, held that good will may exist in relation to an accounting firm. See Malcolm J. Watson, et al., 35 T.C. 203 (filed October 31, 1960); Richard S. Wyler, 14 T.C. 1251 (1950); Rodney B. Horton, 13 T.C. 143 (1949). In Horton and Watson, supra, we have accepted the view that the good will "which has been the subject of sale is nothing more than the probability that the old customers will resort to the old place." Melnik and Karan evidently believed that the probability existed with respect to the firm's clientele of 88 clients built up during a period of over 20 years, and Karan paid a substantial consideration to put himself in the position to profit thereby. We think the inference is a reasonable one on the record before us. Respondent further argues that the consideration was paid to Melnik for the covenant not to slicit or accept business from any of the 88 clients. The value, in our judgment, was *340 in the good will, and the covenant was merely a precaution looking toward enforcement if enforcement became necessary. In Aaron Michaels, 12 T.C. 17 (1949), we said in part (p. 19): But where it [the agreement not to compete] accompanies the transfer of good will in the sale of a going business and it is apparent that the covenant not to compete has the function primarily of assuring to the purchaser the beneficial enjoyment of the good will which he has acquired, the covenant is regarded as nonseverable and as being in effect a contributing element to the assets transferred. Toledo Newspaper Co., 2 T.C. 794; Toledo Blade Co., 11 T.C. 1079. Upon the evidence in the instant case, we conclude that the covenant was not severable from the sale of good will and that no separate part of the consideration is attributable thereto. Respondent, for the first time at the trial, orally made an alternative argument with respect to the payments in 1955 only, [1] that such payments are taxable as guaranteed payments under section 736(a) [2] of the Code of 1954. No amendment to the answer raising this contention was filed. We do not think this issue is properly before us, but assuming that it is, *341 we think it may be briefly disposed of on the merits. Income Tax Regs., sec. 1.736-1(a)(1)(i), provide in part as follows: Section 736 and this section apply only to payments made by the partnership and not to transactions between the partners. Thus, a sale by partner A to partner B of his entire one-fourth interest in partnership A B C D would not come within the scope of section 736. In the instant case, we think it clear that the payments *342 to Melnik were made by Karan and not by the partnership, and that the transaction was between the individuals. Respondent does not question the validity of the regulation, and since it appears plainly applicable to the facts in the instant case, we hold that the payments in question are not to be treated as guaranteed payments under section 736(a). Respondent does not appear to question the proposition that if (as we hold) the payments in issue by Karan to Melnik were for Melnik's interest in the good will of the partnership from which the covenant not to compete was nonseverable, the transaction represented the sale by Melnik of a capital asset, the gain from which is to be treated as long-term capital gain. On the other hand, petitioners do not appear to question the view that the basis of the asset sold was zero. Decision will be entered under Rule 50. Footnotes
1. Respondent does not raise the issue with respect to 1954 payments apparently because section 736 is not applicable to that year. See section 771. ↩
2. SEC. 736. PAYMENTS TO A RETIRING PARTNER OR A DECEASED PARTNER'S SUCCESSOR IN INTEREST. (a) Payments Considered as Distributive Share or Guaranteed Payment. - Payments made in liquidation of the interest of a retiring partner or a deceased partner shall, except as provided in subsection (b), be considered - (1) as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership, or (2) as a guaranteed payment described in section 707(c) if the amount thereof is determined without regard to the income of the partnership. * * *↩